# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALFRED TOSCANO, | |
| Plaintiff, | Civil Action No. 11-4121 (FSH) |
| v. | |
| ASHLEY CASE, et al., | OPINION |
| Defendants. | |

Currently before the Court are a series of pretrial in limine motions filed by Plaintiff [Docket Entry No. 67] and Defendants [Docket Entry No. 76], as well as motions filed by both sides seeking to have the testimony of opposing experts stricken or limited. [See Plaintiff's motion at Docket Entry No. 60,; Defendants' motion at Docket Entry No. 61]. As set forth in the pleadings in this matter and in the papers in support of these motions, this case involves a number of claims by Plaintiff Alfred M. Toscano against the Township of West Orange and six individual Defendants. Plaintiff's claims all stem from an incident in May of 2010 involving Plaintiff's arrest on suspicion of impersonating a police officer – a charge upon which a state grand jury ultimately did not issue an indictment. Plaintiff's present claims against Defendants include common law claims for malicious prosecution, defamatory injury to reputation, negligent supervision, intentional infliction of emotional distress, and false arrest and imprisonment, and various claims of violations of 42 U.S.C. § 1983. Plaintiff filed opposition to Defendants' Motions in Limine [Docket Entry No. 82] as well as to Defendants' Motion to preclude expert testimony [Docket Entry No. 68]. Defendants also filed opposition to Plaintiff's Motions in Limine [Docket Entry No. 84] as well as to Plaintiff's motion to exclude expert testimony

[Docket Entry No. 75]. Defendant Ashley Case joined in Defendants' papers. [Docket Entry No. 80]. The Court decides these pretrial motions as set forth below.

Plaintiff's In Limine Motions.

Plaintiff has asserted nine separate in limine motions for the Court's consideration prior to trial. Plaintiff's first in limine motion seeks a prohibition as irrelevant of any reference at trial regarding Plaintiff's medical history or the introduction at trial of any evidence regarding same. Plaintiff makes this request conditional on the Court's dismissing his claim alleging the intentional infliction of emotional distress. As the Court did not dismiss that claim – or, for that matter, any of Plaintiff's claims -- pursuant to Defendants' initial motion to dismiss or Defendants' motion for summary judgment, see Docket Nos. 15, 81, there is no basis for granting Plaintiff's first in limine motion. Moreover, even assuming there were no existing claim for the intentional infliction of emotional distress, it is difficult for the Court to envision how Plaintiff's mental state, as reflected in his medical records, would not at least be relevant to damages claims potentially arising from the other claims at issue. The Court further finds that that the probative value of this evidence outweighs the factors of potential concern outlined in Federal Rule of Evidence 403. Accordingly, Plaintiff's first in limine motion will be denied.

Plaintiff's second in limine motion seeks the prohibition as irrelevant of any reference at trial to an incident involving the murder of Plaintiff's cousin by his nephew and the subsequent involvement of Plaintiff's brother in hiding the body. While the Court accepts Plaintiff's position that such evidence would be entirely irrelevant for any suggestion that his family is prone to violence, the Court also credits Defendants' argument that this information is relevant to Plaintiff's state of mind at the time of the incidents underlying this matter and therefore relevant on the subject of damages. Defendants point out specifically that just prior to events giving rise

to this matter, Plaintiff's physician noted that Plaintiff was suffering from stress related to "relatives who have legal problems." Certification of Richard D. Trenk (hereinafter "Trenk Cert."), Exhibit A [Docket No. 84, Document 84-1]. The Court further finds that that the probative value of this evidence outweighs the factors of potential concern outlined in Federal Rule of Evidence 403. Accordingly, Plaintiff's second in limine motion will be denied.

Plaintiff's third in limine motion seeks preclusion as irrelevant of any reference by Defendant Patrick Matullo to a 2012 incident in Mississippi involving homicides by a person impersonating a police officer. Plaintiff contends this incident could not have been relevant to Defendant Matullo's state of mind when he decided to arrest Plaintiff in 2010 because the Mississippi incident postdated his arrest by two years. Defendants respond that the Mississippi incident was only offered by Defendant Matullo at his deposition as an example of what can go wrong in police officer impersonation cases and not to show Defendant Matullo's state of mind at the time of Plaintiff's arrest. The Court determines that reference at trial by Defendant Matullo to the Mississippi incident is clearly irrelevant to Defendant Matullo's state of mind at the time of Plaintiff's arrest in 2010 and cannot be admitted for that purpose. Moreover, the Court finds that reference to the Mississippi incident will otherwise do comparatively little to assist the jury in considering this matter at trial, while the nature of the reference – i.e. a homicide – might be unduly prejudicial to Plaintiff and therefore violative of Federal Rule of Evidence 403. Accordingly, Plaintiff's third in limine motion will be granted.

Plaintiff's fourth in limine motion seeks preclusion at trial under Federal Rule of Evidence 404 of any reference to "road rage" incidents in which Plaintiff was or may have been involved. Defendants counter that these incidents are admissible under Federal Rule of Evidence 406 because they constitute a "habit" on the part of Plaintiff regarding how he responds to traffic

incidents.  In Becker v. ARCO Chemical Co., 207 F.3d 176, 203 (3d Cir. 2000), the Third Circuit Court of Appeals addressed the distinctions between character and habit evidence. There, the Court of Appeals referred to the Advisory Committee notes to Rule 406 which observe that while character and habit evidence are "close akin," evidence of habit is "more specific," it involves "one's repeated response to a specific situation," and it contemplates the doing of habitual acts almost semi-automatically.  Id.  Here, evidence has not been offered that Plaintiff has such a fixed and almost semi-automatic reaction to past traffic incidents such that evidence of his responses may be introduced as habit under Rule 406.  Obviously, each of Plaintiff's prior traffic incidents was unique in some respects, and his responses to them were neither exactly the same nor "semi-automatic" in the Rule 406 sense.  Accordingly, Plaintiff's fourth in limine motion will be granted.

Plaintiff's fifth in limine motion seeks preclusion as irrelevant of any reference by Defendants to a prior police incident report (#8047457) that is set forth in the incident report underlying the current dispute (#10016113).  See Trenk Cert., Exhibit F (current incident report) [Docket Entry No. 84-7].  Plaintiff argues that introduction of evidence of this prior incident, involving a charge of harassment, is inappropriate under Federal Rule of Evidence 404.  In response, Defendants argue that they will not seek to introduce evidence of this prior incident to show Plaintiff's propensity for a certain type of behavior, but rather to establish how they were able to locate Plaintiff and to establish their own lack of malice.  Clearly, the prior incident report cannot be introduced to show Plaintiff's propensity for certain behavior, but it is relevant to the pertinent question of how Defendants located Plaintiff.  Consequently, the reference to a prior incident report contained in the incident report underlying the current dispute is admissible for that limited purpose.  The Court will deny Plaintiff's fifth motion in limine; however,

4

Plaintiff may at trial request an appropriate limiting instruction with respect to that information. United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010).[1]

Plaintiff's sixth in limine motion seeks to have excluded at trial as irrelevant and unduly prejudicial evidence of liens or judgments against him. Defendants, in turn, point out that as part of his present lawsuit Plaintiff claims that he lost financial opportunities as a result of the actions of Defendants. See Trenk Cert., Exhibit C (Plaintiff's Complaint, ¶¶ 47 and 84) [Docket Entry No. 84-4]. Defendants further argue that the evidence of liens and judgments against Plaintiff is relevant because it tends to show that Plaintiff's financial situation today is largely unchanged from the time before the incident in question. Clearly, by pleading "lost job opportunities" see Complaint, ¶ 47, and "loss of income," see Complaint, ¶ 84, Plaintiff has placed at issue his financial well-being both before and after the incident in question, and the information Defendants seek to introduce regarding Plaintiff's financial situation is therefore relevant. The Court further finds that that the probative value of this evidence outweighs the factors of potential concern outlined in Federal Rule of Evidence 403. Accordingly, Plaintiff's sixth in limine motion will be denied.

Plaintiff's seventh in limine motion, closely related to his fourth, seeks preclusion at trial under Federal Rule of Evidence 404 of any reference to his past driving history or documentary evidence related thereto. Defendants offer the same arguments in opposition to this motion as they did in opposition Plaintiff's fourth in limine motion; consequently, for the reasons cited in its treatment of Plaintiff's fourth in limine motion, supra, the Court will grant Plaintiff's seventh in limine motion.

---

[1] The Court notes that the other purpose for which Defendants suggest it might seek to introduce this information – to establish its own lack of malice – might very well give rise to a valid objection under Federal Rule of Evidence 404. The Court does not offer a final opinion as to that issue at this time, however, but instead leaves that for determination at trial.

Plaintiff's eighth in limine motion seeks to preclude as irrelevant the introduction of any evidence or exhibits showing that he has a firearms license. Defendants offer little, if any, argument in opposition to this motion, and the Court fails to see how such evidence might be relevant to the claims or defenses at trial and agrees that introduction of such evidence would also be unduly prejudicial to Plaintiff. Accordingly, Plaintiff's eighth in limine motion will be granted.

Plaintiff's ninth and final in limine motion seeks to preclude as irrelevant and unduly prejudicial an evidence regarding his efforts to expunge the subject arrest from state and municipal records. Defendants argue that this information is relevant because any successful expungement of these records will have some bearing on Plaintiff's claims regarding "lost job opportunities" see Complaint, ¶ 47, and "loss of income," see id., ¶ 84. As noted, supra, Plaintiff has placed at issue his financial well-being both before and after the incident in question; consequently, his efforts to expunge these records and his likely success in so doing will have some bearing on those claims and are therefore relevant. The Court further finds that that the probative value of this evidence outweighs the factors of potential concern outlined in Federal Rule of Evidence 403. Accordingly, Plaintiff's ninth in limine motion will be denied.

Defendants' In Limine Motions.

Defendants have asserted five separate in limine motions for the Court's consideration prior to trial. Defendants' first in limine motion seeks the preclusion under Federal Rules of Evidence 401 and 403 of any testimony at trial by Plaintiff's two minor children. Defendants argue that the parties have stipulated regarding all relevant events of which the children may have knowledge and that their testimony would therefore be unnecessarily cumulative and intended merely to inflame the finder of fact. Plaintiff counters that the children can give

6

valuable insight beyond any stipulations that have been made regarding the relevant events of which they have knowledge – namely, the manner in which police behaved when they first came to Plaintiff's home – and that their testimony would neither be needlessly cumulative nor unduly prejudicial.  The Court agrees that the children's expected testimony would go beyond any basic stipulations the parties have made in this matter, and it further agrees that the testimony of the children, if properly limited to the relevant facts, will not be so prejudicial to Defendants as to justify its preclusion under Rule 403.  Accordingly, Defendants' first in limine motion will be denied.

Defendants' second in limine motion seeks the preclusion at trial of any evidence concerning the state grand jury's determination with respect to the charge against Plaintiff of impersonating an officer.  In support of their motion, Defendants cite to the decision in Galbraith v. Hartford Fire Ins. Co., 464 F.2d 225, 226 (3d Cir. 1972), which, they assert, precludes the introduction of any such evidence at trial.  Plaintiff counters by stating that the Galbraith decision is inapposite because it only addresses the admissibility of a grand jury's failure to indict for the purpose establishing probable cause; it does not address the use of such evidence for the purpose of establishing that the underlying criminal proceeding terminated in Plaintiff's favor – a key element in establishing a cause of action for malicious prosecution.

The Court agrees with Plaintiff.  While the Galbraith decision does appear to disapprove of using a grand jury's failure to indict for the purpose establishing probable cause, it does not directly address the admissibility of such evidence for establishing the pertinent element in a case for malicious prosecution – i.e. termination in favor of Plaintiff.  Moreover, one of the cases principally relied upon in the Galbraith opinion, Stein v. Schmitz, 137 N.J.L. 725 (1948), does in fact cite authority concerning the use of a grand jury's decision to establish this element of a

7

malicious prosecution claim and notes that, for this purpose, use of such evidence is appropriate. Id. at 727.  Accordingly, Plaintiff may introduce evidence of the state grand jury's "no bill" for this discrete purpose, and Defendants' second in limine motion will therefore be denied.[2]

Defendants' third in limine motion seeks the preclusion at trial of two witnesses listed by Plaintiff in the Joint Final Pretrial Order:  Police Sergeant Steven DeRosa and Police Chief Abbott.  Defendants argue that Plaintiff should be barred from calling these witnesses because he never identified them as potential trial witnesses before naming them in the Joint Final Pretrial Order and because their testimony would be irrelevant and/or unnecessarily cumulative.  Plaintiff opposes by stating that his failure to identify these witnesses was harmless, citing In Re Mercedes Benz Antitrust Litigation, 225 F.R.D. 498, 506 (D.N.J. 2005), and that their testimony will be relevant and non-cumulative.  Plaintiff does not, however, dispute that he did not list or otherwise identify these witnesses as potential witnesses for trial at any point before the entry of the Joint Final Pretrial Order.  The Court determines that because these two witnesses were not identified earlier, Defendants were indeed deprived of the opportunity to have them deposed them during discovery, as would normally be their right.  This has created unfair surprise for Defendants that cannot be remedied at this late date.  See Mercedes Benz, 225 F.R.D. at 506.[3] Accordingly, Defendants' third in limine motion will be granted.

---

[2] Defendants also point out that Plaintiff failed timely to identify at the time of the pretrial order any documentary evidence of the state grand jury's "no bill" that he intended to introduce at trial.  While this observation is well-taken and might ordinarily preclude the use of a document at trial, Plaintiff would still be free to testify at trial as to the state grand jury's "no bill."  Moreover, the parties have already stipulated in the Joint Final Pretrial Order as to the negative action taken by the grand jury.  See Joint Final Pretrial Order, Docket Entry No.62, at 7, ¶ 21. Accordingly, for clarity of presentation, Plaintiff will be allowed to introduce testimonial and documentary evidence regarding the grand jury's "no bill" for the purpose of establishing the pertinent element of his claim for malicious prosecution.

[3] While the Court grants this motion in limine because these witnesses were not timely identified in discovery, the Court would note that the testimony to be adduced from these two witnesses may indeed be needlessly cumulative as well because it appears that similar testimony can and will be offered by Plaintiff's other witnesses.

Defendants' fourth <u>in limine</u> motion seeks to have Plaintiff's claims for punitive damages barred and, per procedures applicable under New Jersey statutes, addressed only in a bifurcated hearing if there is a verdict in favor of Plaintiff. Plaintiff, in turn, points out that this is first and foremost an action under 42 U.S.C. § 1983 and urges that no bifurcation on the issue of punitive damages is necessary.

With respect to the availability of punitive damages, Plaintiff rightly observes that punitive damages cannot be sought from or assessed against municipalities under § 1983. <u>City of Newport v. Fact Concerts, Inc</u>., 453 U.S. 247, 271 (1983).[4] It is further clear that individual officials may be sued for punitive damages under § 1983. <u>Feldman v. Philadelphia Housing Authority</u>, 43 F.3d 823 (3d Cir. 1994). Consequently, Plaintiff's claims for punitive damages under § 1983 will proceed in accord with these precedents.

As regards Defendants' bifurcation request, the Court agrees with Plaintiff that this action is primarily an action under § 1983, and that § 1983 does not require the type of bifurcation that Defendants request with respect to punitive damages. To the extent that Plaintiff has brought viable state law tort claims under the New Jersey Tort Claims Act, that does not change the facts that this case is in this Court by virtue of § 1983 and that the proper procedure for an action under § 1983 should govern. <u>See, e.g.</u>, <u>Robinson v. Jordan</u>, 2012 WL 2397446, at *1 n.4 (D.N.J. June 25, 2012). It can hardly be the purpose of the supplemental jurisdiction statute, 28 U.S.C. § 1367, to create the potential for multiple, confusing, and potentially cumulative procedures at trial for assessing liability and damages. Accordingly, Defendants' fourth <u>in limine</u> motion will be denied.

---

[4] It similarly appears that municipalities cannot be sued for punitive damages under New Jersey law. N.J.S.A. 59:2-10.

Finally, Defendants' fifth in limine motion requests an order precluding as irrelevant the admission at trial of certain Facebook pages which Plaintiff claims will show the friendly relationship between certain people who took actions in this matter that were adverse to him. Given the general broad scope normally accorded to the concept of relevance, the Court is hesitant to bar outright reference at trial to these Facebook pages and therefore denies this motion. The motion will only be denied without prejudice, however, to Defendants' right to raise it again at trial should Plaintiff fail to proffer a sufficient reason as to why admission of a particular Facebook page will assist the trier of fact in considering facts of consequence to the litigation. Fed. R. Evid. 401.

Cross Motions to Exclude Expert Testimony.

Both Plaintiff and Defendant have filed motions to exclude the testimony of the other side's expert. [See Plaintiff's motion at Docket Entry No. 60; Defendants' Motion at Docket Entry No. 61]. Specifically, Defendants seek an order precluding at trial the testimony of William F. Kraus ("Kraus"), a retired police official whom Plaintiff offers as an expert regarding proper law enforcement practices and procedures. Similarly, Plaintiff seeks an order precluding at trial the testimony of Joseph Craparotta ("Craparotta"), a retired police official whom Defendants likewise offer as an expert regarding proper law enforcement practices and procedures.

In his fifteen page report, Kraus first identifies and summarizes the materials he reviewed relating to this case, he then discusses those materials in some detail, and he finally offers approximately two pages of conclusions. See Certification of Mark Y. Moon (hereinafter "Moon Cert."), Exhibit A [Docket No. 60, Document 60-11]. Generally speaking, the conclusions offered by Kraus focus on: 1) his view of the propriety of the actions taken by West Orange

police officials with respect to Plaintiff; 2) the need for policies regarding potential conflicts of interest in police departments; 3) the propriety of the supervision exercised in this case by West Orange police officials over subordinates; 4) whether the arrest warrant obtained for Plaintiff was obtained without a finding of probable cause; 5) whether the West Orange Police Department improperly accommodated Ashley Case when it took action against Plaintiff; 6) whether a Summons should have been issued for Plaintiff rather than an arrest warrant; and 7) whether Defendants violated Plaintiff's civil rights.

In his thirty nine page report, Craparotta spends the first thirty five pages analyzing material relevant to this case, discussing background information regarding the Township of West Orange and the West Orange Police Department, and offering opinions as to specific actions taken by Defendants in this matter. See Certification of Oleg Nekritin (hereinafter "Nekritin Cert."), Exhibit A-1 [Docket No. 61, Document 61-5]. Craparotta's opinions with respect to this case are then restated in summary fashion in the last four pages of his report. Generally speaking, the conclusions offered by Craparotta focus on: 1) his view of the propriety of the actions taken by West Orange police officials with respect to Plaintiff; 2) the professional nature of the West Orange Police Department; 3) the propriety and sufficiency of the training of West Orange police officials (particularly with respect to the concept of probable cause); 4) the credibility of the stories told by Plaintiff and Ashley Case; 5) the possibility that road rage played a part in the confrontation between Plaintiff and Ashley Case; 6) the existence of probable cause to arrest Plaintiff; 7) the propriety of actions taken by Ashley Case; 8) the propriety of actions taken by police officials in this matter; 9) the need for a police department to have special rules in place for cases in which family members are involved; 10) his opinion regarding whether Ashley Case's relationship to police officials had any part in the handling of this matter; 11) the

need for Miranda warnings in this case; 12) and his view regarding whether the West Orange Police Department was guilty of deliberate indifference with respect to Plaintiff's rights.

A. Background Law

Federal Rule of Evidence 702, which governs the admission of expert testimony in federal court, provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).

The requirement that an expert be qualified is liberally construed by the Third Circuit, which has "eschewed imposing overly rigorous requirements of expertise." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). A broad range of knowledge, skills, and training qualify a witness as an expert. *Id.*

With respect to non-scientific experts, the Court must be careful to scrutinize their proposed testimony as closely as that of scientific experts, Fed. R. Evid. 702 Advisory Committee's Notes on 2000 Amendment)(citation omitted), and the Court must take care to ensure when it finds an expert qualified to testify on a particular subject that its finding does not simply amount to "taking the expert's word for it." Id. (quoting Daubert v. Merrill-Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995)). Moreover, a proffered expert's field of expertise must encompass the subject matter of the expert's testimony, Elcock, 233 F.3d at 742, and not merely be adjacent to it. Player v. Motiva Enterprises LLC, 2006 WL 166452, at *5

(D.N.J. Jan. 20, 2006). Just because a proffered expert is a police officer does not necessarily mean that he or she is necessarily qualified to opine on all law enforcement matters. Higginbotham v. Volkswagenwerk, 551 F. Supp. 977 (M.D. Pa. 1982).

To be reliable, an expert's opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." Paoli, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 589). Thus, "[c]ourts need not admit bare conclusions or mere assumptions proffered under the guise of 'expert opinions.'" Feit v. Great-West Life & Ann. Ins. Co., 460 F. Supp. 2d 632, 637 (D.N.J. 2006). As the Advisory Committee for the Federal Rules of Evidence has noted, however, some types of expert testimony are more easily subjected to a methodology and are consequently more objectively verifiable. Fed. R. Evid. 702 (Committee Notes). For example, the opinion of a physician with respect to whether or not the proper tests were administered to effectively diagnose an ailment will answer to a more precise methodology that the opinion of a police official regarding normal, expected police practices in a particular situation. For this reason, courts have recognized that, in certain situations, expert testimony based on experience alone may be acceptable. United States v. Jones, 107 F.3d 1147 (6th Cir. 1997).

In order to "fit," the expert's testimony must in fact assist the fact-finder, by providing it with relevant information necessary to a reasoned decision of the case. Paoli, 35 F.3d at 743; Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003). An expert who renders an opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires." Elcock, 233 F.3d at 756 n.13. Consequently, "[t]his type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement." Id.

13

While the party seeking to present expert testimony must establish by a preponderance of the evidence that an expert is qualified and that his or her testimony is reliable, Paoli, 35 F.3d at 744, rejection of expert testimony is the exception and not the rule, see Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). There are, however, certain instances in which the testimony of proffered experts cannot be approved. Clearly, expert opinions will not be permitted when they are not well-reasoned or too speculative, Roberson v. City of Philadelphia, 2001 WL 210294, at *4 (E.D. Pa. Mar. 1, 2001), or when they are beyond the expertise of the expert. Higginbotham, 551 F. Supp. at 982-83. Moreover, an expert cannot testify as to ultimate legal conclusions, as to do so would improperly invade the province of the court and the jury. AT&T Corp. v. JMC Telecom, Inc., 470 F.3d 525, 534 (3d Cir. 2006). This is particularly true when an expert is offered to testify in with respect to a potential violation of rights secured under the Constitution. *See* Whren v. United States, 517 U.S. 806, 815 (1996); Smith v. New Jersey, 2013 WL 3658786, at *5 (D.N.J. July 11, 2013).

B. Analysis

Given these standards governing the admission of expert testimony, it is clear to the Court that there are problems regarding the admissibility of significant portions of the proposed expert testimony for both sides.

With respect to the proposed testimony of Plaintiff's expert, Kraus, a few problems are readily apparent. First, the ultimate conclusion he offers at the end of his report – that Defendants violated Plaintiff's civil rights – is clearly an inappropriate legal conclusion that he cannot offer at trial. Kraus's opinions that the arrest warrant in this case was obtained without a

14

proper showing of probable cause and that a Summons should have been used instead also violate the basic tenet that experts shall not opine regarding legal issues or questions. Also improper are Kraus's opinions regarding the overall reasonableness of the various actions taken by police officials in this case and the reasonableness of the supervision provided within the West Orange Police Department. See Alvarado v. Oakland County, 809 F. Supp.2d 680, 690-91 (E.D. Mich. 2011)(expert may testify regarding nationally recognized police standards and departmental guidelines, but could not opine as to whether police official's conduct was unreasonable); Smith, 2013 WL 3658786, at *5; see also United States v. Korbe, 2010 WL 4639042, at *4 (W.D. Pa. Nov. 8, 2010)(issue of reasonableness generally not a subject of expert testimony but best left for jury). Finally, Kraus's opinion that the West Orange Police Department did what it did as an improper accommodation to Ashley Case is speculative and does not implicate any special expertise on the part of Kraus such that it may be introduced at trial.

These observations do not mean, however, that the testimony of Plaintiff's expert need be stricken in its entirety. Although Defendants argue that Kraus is unqualified to testify as to the matters in question, his many years in law enforcement, including nearly 40 years as an Officer in the Rutherford, New Jersey Police Department, mean he is well-versed in proper police practices and procedures and is indeed qualified to testify as to same. Moreover, while Defendants urge that Kraus did not apply appropriately exhaustive or specific methodologies to his analysis of this case, the Court recognizes that not every subject on which an expert might properly opine necessarily admits of a specific methodology. See Fed. R. Evid. 702 (Committee Notes). Lastly, although Defendants raised in their supplemental submission to the Court the notion that claims implicating constitutional concerns (i.e. claims under § 1983) are not a proper

15

subject for expert testimony, see Defendants' Supplemental Memorandum, at 5-6 [Docket No. 102, Document 102-1], expert testimony is clearly not forbidden in such situations. See Nicini v. Morra, 212 F.3d 798, 817 n.3 (3d Cir. 2000) (testimony regarding proper police training permitted) (citation omitted).

In light of the foregoing, the Court is inclined to permit Plaintiff's expert, Kraus, to testify at trial, but to limit his testimony to: 1) matters covered in his report which concern typical police department policies, methods, training, and supervision as those would relate to the issues presented in this matter; 2) the general purpose to be served by those examples of typical police department policies, methods, training, and supervision; and 3) observations from his report regarding whether those typical police department policies, methods, training, and supervision were in fact followed in this case. The Court recognizes that, in the final analysis, Plaintiff is offering the testimony of Kraus for the rather unremarkable proposition that a police officer must not behave in a biased fashion, and the Court is not convinced that his testimony will be of huge value to the jury. Still, it may be of some value, and given the general liberal approach in this Circuit regarding the admission of expert testimony, the Court has decided it will allow the testimony on the limited basis described herein.

With respect to the proposed testimony of Defendants' expert, Craparotta, a number of problems are similarly readily apparent. First, a number of the conclusions in Craparotta's report amount to legal conclusions which Defendants cannot offer at trial, including: 1) the existence of probable cause to arrest Plaintiff; 2) the need for Miranda warnings at the time of Plaintiff's arrest; and 3) his determination that the West Orange Police Department was not guilty of deliberate indifference with respect to Plaintiff's rights. Additionally, Craparotta's opinion that Plaintiff, in his confrontation with Ashley Case, was suffering from an episode of road rage is

16

improper as this would appear to involve determinations requiring an expertise in psychology or psychiatry that Craparotta does not profess to possess.[5]  Also improper are Craparotta's opinions regarding the reasonableness of the actions taken by West Orange police officials with respect to Plaintiff and the reasonableness and sufficiency of the training afforded West Orange police officials, particularly with respect to the concept of probable cause.  Furthermore, Craparotta's opinions regarding the credibility of the stories told by Ashley Case and Plaintiff, the reasonableness of the actions taken by Ashley Case, and the idea that the West Orange Police Department improperly acted in favor of Ashley Case, are matters that would be within the common understanding of regular citizens and do not require – and are not benefited by – the opinions of a police practices expert.  Finally, the Court finds that Craparotta's general opinions regarding the overall professional nature of the West Orange Police Department are of too general a nature to be helpful to the jury, and they appear in any event to be offered as evidence of conformity that would be barred under Federal Rule of Evidence 404(a).

Not surprisingly, as Defendants argued in the case of Kraus, Plaintiff urges that Craparotta should be disqualified because he in unqualified and because his opinions do not answer to a specific methodology.  The Court finds, however, that with respect to qualifications, Craparotta's nearly thirty years of service on the front line of law enforcement mean he, like Kraus, is well-versed in proper police practices and procedures and is indeed qualified to testify as to same.  Additionally, while Plaintiff challenges Craparotta on the basis of methodology, the Court would reiterate its observation that that not every subject on which an expert might properly opine necessarily admits of a specific methodology.  Accordingly, the Court will similarly permit Craparotta to testify at trial, but his testimony will likewise be limited to:  1)

---

[5] The Court would note that an additional problem with Craparotta's conclusions regarding the existence of probable cause to arrest is that his determination relies in part on his determination that Plaintiff was suffering from road rage at the time of the confrontation.

matters covered in his report which concern typical police department policies, methods, training, and supervision as those would relate to the issues presented in this matter; 2) the general purpose to be served by those examples of typical police department policies, methods, training, and supervision; and 3) observations from his report regarding whether those typical police department policies, methods, training, and supervision were in fact followed in this case.

Conclusion

For the foregoing reasons, the Court will deny Plaintiff's first, second, fifth, sixth, and ninth in limine motions; it will grant Plaintiff's third, fourth, seventh, and eighth in limine motions, it will deny Defendant's first, second, fourth, and fifth in limine motions; it will grant Defendants' third in limine motion; and it will grant in part and deny in part the motions of both parties to preclude the trial testimony of their opponent's expert.[6] An appropriate Order accompanies this Opinion.

  s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**

Dated: September 20, 2013

---

[6] The Court notes that its denials of Plaintiff's fifth in limine motion and Defendants' fifth in limine motion are with the qualifications set forth in this Opinion, supra.